IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PAULA W. COKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:15cv436-SRW |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Paula W. Coker commenced this action on June 19, 2015, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner denying her claim for a period of disability and Disability Insurance Benefits. (Doc. 1). Plaintiff alleged a period of disability beginning on April 10, 2012 due to "lower lumbar problems." (Doc. 11 at 2). The court's record indicates that the plaintiff "has had back pain since the 1990's," and a history of treatment with medication, steroid injections, physical therapy, and two surgeries. (Doc. 10, 11, 12-2 at 99). Administrative Law Judge Walter V. Lassiter, Jr. ("ALJ") determined, *inter alia*, that the plaintiff was diagnosed with and treated for the following severe impairments: status-post decompressive laminectomy at L4-L5, Aspen fusion at L4-L5, and right sided L5 pars interarticularis repair; status-post lumbar laminectomy at L5 with Aspen hardware removal at L4-L5 and posterior lateral pedicle screw fusion at L5-S1; and obesity. (Doc. 12-2 at 95). On January 31, 2014, the ALJ issued an adverse decision.[1] (Doc. 12-2 at 93-108). The Appeals Council denied plaintiff's request for review on May 26, 2015, and the ALJ's decision became the final decision of the Commissioner. (Id. at 2-5).

---

[1] Plaintiff was represented by counsel at the hearing before the ALJ. (Doc. 12-2 at 93).

1

This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. See 28 U.S.C. § 636(c). (Doc. 7, 8). For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be remanded for additional proceedings.

Plaintiff also moves for an award of reasonable attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 241(d) and an extension of time to file an application for attorney's fees under 42 U.S.C. § 406(b). (Doc. 10 at 15). These motions will be denied without prejudice.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Richardson v. Perales, 402 U.S. 389, 390 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. It is "more than a scintilla, but less than a preponderance." Id. A reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the

2

ALJ's determination of the proper legal standards to be applied. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), overruled on other grounds by Johnson v. Apfel, 189 F.3d 561, 562-63 (7th Cir. 1999); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

Pope, 998 F.2d at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. Id.

## BACKGROUND AND DISCUSSION

Plaintiff has a documented history of worsening lower back problems and pain since 1994. (Doc. 12-8 at 2-22). Prior to plaintiff's alleged onset date in April 2012, medical records from 2010 indicate that plaintiff suffered from mild degenerative disc disease at L4-S1 and scoliosis. (Id. at 11, 74). At that time, plaintiff was treated by a chiropractor, Dr. William Kirk Skinner, D.C. (Id. at 2-22).

In January 2012, plaintiff sought treatment from Dr. Roger Kemp, M.D., who ordered imaging tests and diagnosed plaintiff with lumbosacral spondylosis, lumbosacral root lesions, lumbago, facet joint arthritis and degenerative disc disease at L4-L% without spinal stenosis. (Id. at 14, 17). Dr. Kemp prescribed medication and performed lumbar facet blocks; however, this course of treatment did not relieve plaintiff's pain. (Id.). Dr. Skinner referred the plaintiff to a neurosurgeon, Dr. Patrick Ryan, M.D. (Id. at 29). Dr. Ryan evaluated plaintiff for three months and concluded that plaintiff required surgery to treat or correct disc degeneration and radiculating pain. (Doc. 12-8 at 26-29).

In April 2012, Dr. Wayne L. Warren, Jr., M.D., performed the first of plaintiff's two back surgeries – a lumbar laminectomy with Aspen fusion at L4-L5 and a repair of pars defects at L4-L5. (Doc. 12-2 at 99 (citing Doc. 12-8 at 58)). The ALJ notes that, "[a]lthough the [plaintiff] described improvement, she reported worsening pain in the summer following the procedure. (Doc. 12-2 at 99 (citing Doc. 12-8 at 52)). On June 27, 2012, plaintiff presented to Dr. Warren for a "6 week postoperative visit" where plaintiff reported that "her preoperative symptoms have improved … [and that] [p]hysical therapy[2] and sitting aggravate her pain." (Doc. 12-8 at 38). Dr. Warren noted that plaintiff's "back and bilateral hip/radicular pain in the L5 distribution has worsened since her last visit." (Id.).

Between April 2012 and October 2012, plaintiff's symptoms either did not improve or actually worsened despite treatment with epidural and steroid injections performed by Dr. Bradley Katz, M.D., as well as physical therapy and medication. (Doc. 12-8, 12-9). The ALJ observes that, in October 2012, Dr. Warren performed a second surgery, "which involved a lumbar laminectomy at L5, Aspen hardware removal at L4-L5, and a posterior lateral pedicle screw fusion at L5-S1." (Doc. 12-2 at 100 (citing Doc. 12-9 at 18)). Dr. Warren's treatment notes from August 1, 2012 until October 15, 2013 – one year after plaintiff's second back surgery – indicate that plaintiff continued to suffer pain and limited mobility as a result of her back problems. (Doc. 12-10 at 21-41). While Dr. Warren's notes use the word "improve," or variations thereof, to describe plaintiff's post-operative progress, there is no explanation in the treatment notes regarding the plaintiff's actual level of improvement. (Id.). In other words, it is impossible to determine from

---

[2] The ALJ states that "Dr. Warren sent the claimant to physical therapy with no relief." (Doc. 12-2 at 99 (citing Doc. 12-9 at 57-59)). The records to which the ALJ refers in support of his conclusion that physical therapy provided "no relief" are billing statements from "Tallassee Rehab" that actually contain no information regarding the efficacy of physical therapy. (Doc. 12-9 at 57-59). The ALJ's finding on this point lacks evidentiary support; it also contradicts plaintiff's statements to Dr. Warren, as evidenced by Dr. Warren's June 27, 2012 treatment notes. (Doc. 12-8 at 38).

those notes how the unspecified improvement in plaintiff's condition bears on the severity of her overall condition or her prognosis for recovery. Dr. Warren's use of the word "improve," without context or explanation, is not evidence from which the ALJ could reasonably make accurate factual findings regarding the plaintiff's condition, functional limitations, or level of improvement.

Approximately one month after her second back surgery, on November 29, 2012, plaintiff underwent a consultative examination by Dr. Richard Crittenden, M.D.[3] (Doc. 12-9 at 42). Dr. Crittenden observed the following:

> [Plaintiff] continues with significant low back pain. She cannot sit for long. She can stand for up to 10 minutes. At home she uses a walker sometimes to stabilize herself. Standing is generally limited to 10 minutes. Back does not hurt all the time, but most of the time. It seems to be getting better since the last surgery.
> \*\*\*
> She can walk without assistance. She brings no cane. She sits comfortably. She can get on and off the exam table without assistance. She can remove her shoes and put them back on. Positive "hairy legs" those being her words, being that her legs are unshaven because it hurts her back too much to do so.

(Id. at 43-44). Dr. Crittenden noted that plaintiff's "activities of daily living" include living with her husband and three children. (Id. at 43). "She helps with some of the activities of daily living, including sweeping small areas, help[s] with cooking and washing dishes." (Id.). However, plaintiff cannot "do anything outside of the house … [i]t hurts too much for her to go anywhere." (Id.). "A typical day is spent at home mostly sitting and lying down." (Id.). The ALJ correctly

---

[3] Dr. Crittenden provides a "history of present illness" in his report of the consultative examination that is not wholly accurate. For example, Dr. Crittenden states that an "October 18, 2012" treatment note by Dr. Warren "reports that as of that date the radicular symptoms that she had preoperatively were resolved with the earlier operation." (Doc. 12-9 at 42). There is no record of an October 18, 2012 treatment note by Dr. Warren. On October 18, 2012, plaintiff underwent her second back surgery. (Doc. 12-9 at 18). The ALJ relied heavily on Dr. Crittenden's one-time evaluation of the plaintiff in formulating the plaintiff's RFC and discounting plaintiff's credibility, and as evidence to bolster the ALJ's conclusion that the plaintiff's condition improved over time and with surgical treatment. There is no acknowledgement in the ALJ's written decision of errors within Dr. Crittenden's report.

notes that Dr. Crittenden diagnosed the plaintiff with "low back pain."  (Doc. 12-2 at 100 (citing Doc. 12-9)).

The plaintiff continued with treatment for her lower back issues and pain throughout 2013, which included prescription medication, follow-up visits with Dr. Warren, and narcotic pain medication and steroid injections with Dr. Katz.  (Doc. 12-9, 12-10).  MRIs were performed during that time as well.  (Doc. 12-10).  On October 15, 2013, Dr. Warren referred plaintiff to a physical therapist, Karen Lynn, P.T., for a disability evaluation.  (Doc. 12-10 at 21).  The ALJ paraphrases Ms. Lynn's evaluation as "not[ing] that the [plaintiff] has not pursued physical therapy since the second back surgery."  (Doc. 12-2 at 100 (citing Doc. 12-10 at 59)).  However, nothing in Ms. Lynn's notes or elsewhere in the administrative record actually supports a finding of fact that the plaintiff failed to seek or "pursue" physical therapy following the second surgery.  Ms. Lynn's notes state only that plaintiff "reports that she had [physical therapy] after [the] first surgery but none after [the] second surgery." (Doc. 12-10 at 59).  There is no evidence of record that any physician recommended or prescribed physical therapy for the plaintiff after her second surgery, nor is there evidence to support a conclusion that a medical need existed for physical therapy.  As the record is silent on this point, it is equally possible that plaintiff's doctors determined that physical therapy following the second surgery might worsen her condition.

Ms. Lynn's report indicates that plaintiff "gave maximum effort on all test items … [s]he participated in all that was asked of her.  She is very sensitive to being on her feet or sitting for short periods of time." (Doc. 12-10 at 50-51).  Plaintiff was in pain during her physical therapy evaluation. (Doc. 12-10 at 50). Ms. Lynn determined, in summary, that plaintiff could not lift or carry more than five pounds, plaintiff had great difficulty sitting and standing for anything greater than a short period of time due to her back condition, and she could use her upper extremities only

occasionally. Ms. Lynn recommended that plaintiff walk with a cane for her personal safety and to improve her poor balance. (Doc. 12-10 at 61-66).

On October 28, 2013, Dr. Warren completed an "impairment evaluation" in which he reached the same functional limitation findings and recommendations as those contained in Ms. Lynn's report, a point which the ALJ notes in his written decision. (Doc. 12-2 at 101; Doc. 12-10 at 61-66, 82-89). The functional limitation evaluations supplied by Dr. Warren and Ms. Lynn are the only such evidence of record. Dr. Warren found that plaintiff has a "whole person impairment" of "10%." (Doc. 12-2 at 82).

Seemingly unrelated to her treatment for her back problems, on February 5, 2013, plaintiff saw Dr. Howard C. Snider, M.D., for an office visit following a mammogram.[4] (Doc. 12-9 at 61). Dr. Snider notes that plaintiff had two back surgeries within a 6-month period, that the "first one did not help but the second one has helped somewhat. She has gained weight because she has not been exercising. I have cautioned her that she needs to lose the weight and discussed the reasons for doing that." (Id.). Previously, on May 25, 2011, Dr. Snider discussed with the plaintiff the correlation between weight gain and an increased risk of breast cancer. (Doc. 12-9 at 62). The ALJ found that "Dr. Snider's [February 5, 2013] statements reference the nexus between obesity and musculoskeletal complications." (Doc. 12-2 at 100). However, Dr. Snider's treatment notes in fact reflect only that he expressed a medical opinion regarding the link between weight gain and an increased cancer risk; the treatment notes make no observation about the impact of weight gain

---

[4] The ALJ does not explain what role Dr. Snider played in plaintiff's treatment for her back issues, or whether he is a consultative examiner or a treating physician, or if he is a specialist. (Doc. 12-2 at 100). The administrative record provides some illumination on these points. (Doc. 12-9 at 61-65). Dr. Snider is a surgeon who treated plaintiff between 2008 and 2013 for breast cancer with a left lumpectomy, radiation therapy, and medication. (Id.; Doc. 12-10 at 59). Beginning in April 2008, plaintiff was treated for breast cancer with "37 rounds of radiation," a lumpectomy, and a four-year course of treatment with the medication Tamoxophen. (Doc. 12-10 at 59). There is no indication in the record that Dr. Snider treated plaintiff for back problems.

8

on plaintiff's back issues. Thus, the ALJ's finding that Dr. Snider opined about plaintiff's weight gain and a "nexus" with plaintiff's back problems is not based on substantial evidence.

The ALJ, in his written decision, formulated the following RFC:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: She is authorized to alternate between sitting, standing, and walking at 30-60 minute intervals while remaining at her workstation. She can sit up to six hours total over the course of an eight-hour workday. She can stand and/or walk a total of six hours over the course of an eight-hour workday. She cannot walk or stand on uneven terrain. She can occasionally use her lower extremities for pushing, pulling, and the operation of controls. She can frequently use her upper extremities for reaching overhead. She is not otherwise limited in the use of her upper extremities. She cannot climb ladders, ropes, poles, or scaffolds. She can climb ramps and stairs a total of one hour each over the course of an eight-hour workday. She can occasionally balance and stoop. She cannot crawl. She can kneel and crouch up to a total of one hour each over the course of an eight-hour workday. She cannot work in extreme cold. She can occasionally work in wetness, humidity, and extreme heat. She cannot work in poorly ventilated areas. She cannot work while subject to vibrations directly affecting her lower back or lower extremities. She cannot work at unprotected heights. She cannot operate hazardous machinery. She cannot perform work activity that requires her to respond to rapid and [/] or frequent, multiple demands. She can occasionally operate motorized vehicles.

(Doc. 12-2 at 98). The ALJ made the RFC determination after concluding that "the intensity, persistence and limiting effects of [the plaintiff's symptoms] are not entirely credible" and assigning "little weight" to the opinion evidence supplied by Dr. Warren and Ms. Lynn. (Doc. 12-2 at 100-101).

Plaintiff asserts numerous arguments in support of this appeal. Isn addition to challenging the ALJ's factual findings as being inconsistent with the evidence of record, the plaintiff, *inter alia*, (1) argues that the ALJ's credibility determination as to plaintiff's subjective complaints of her symptoms and pain are not in conformity with correct legal standards or are not based on substantial evidence; (2) contends that the ALJ's assignment of "little weight" to Dr. Warren's opinion testimony is erroneous; and (3) maintains that the ALJ impermissibly acted as both judge

and medical doctor. (Doc. 10). Because the court agrees with these three arguments, the plaintiff's remaining contentions are not addressed in this opinion.

I.  The ALJ's Credibility Determination

The ALJ discredits plaintiff's "statements" concerning her pain and symptoms, including pain, for the following reasons:

> Contrary to the [plaintiff's] statements, records show that her health improved after the second surgery. (Exhibits 17F/2, 9). The [plaintiff] also demonstrated her ability to walk without assistive devices, albeit with a mildly antalgic gait. (Exhibit 8F/3). Additionally, the [plaintiff] failed to pursue physical therapy after her second surgery, raising questions about the extent of her limitations. The [plaintiff] did not complete function reports. Her testimony about reclining much of the day stands in contrast to statements she made to Dr. Crittenden. (Exhibit 8F/3). His report documents the [plaintiff's] ability to sweep, cook, and wash dishes. (Exhibit 8F/3). In addition to reclining, the [plaintiff] told the doctor that she spends much of her time sitting. (Exhibit 8F/3). The undersigned observed the [plaintiff] changing positions when she testified, and her representative noted that she moved about the hearing room. However, the [plaintiff] also laughed multiple times during the hearing.

(Doc. 12-2 at 101).

To demonstrate that pain renders her disabled, plaintiff must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" Edwards v. Sullivan, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)); see also Holt, 921 F.2d at 1223. The ALJ references this familiar standard in his written decision. (Doc. 12-2 at 100). If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Jones v. Bowen, 810 F.2d 1001, 1004 (11th Cir. 1986); MacGregor v. Bowen, 786

F.2d 1050, 1054 (11th Cir. 1986)).  The ALJ did not correctly apply these legal principles in this case.

The ALJ's findings of fact and discrediting of plaintiff's "statements" are not based on substantial evidence.  See Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).  The ALJ's finding that plaintiff's health improved following her second surgery is not a basis on which to discredit plaintiff's subjective statements because, as discussed above, there is no evidence in Dr. Warren's treatment notes, on which the ALJ relies to support this reason for discounting plaintiff's credibility, to explain what level of improvement plaintiff experienced after her second surgery.  (Doc. 12-2 at 101).  The only medical evidence regarding plaintiff's functional capacity is found in Dr. Warren's October 28, 2013 evaluation and in Ms. Flynn's physical evaluation, both of which support the plaintiff's subjective statements and which the ALJ assigns "little weight."  (Id.).  In essence, the ALJ's broad finding that the plaintiff's health improved – without any discussion by the ALJ of how the evidence of record demonstrates that the improvement mitigates against her subjective complaints or statements – does not constitute substantial evidence to discredit her credibility.

The ALJ implies that plaintiff lacks credibility because she can walk without the assistance of a cane; however, that reasoning is based upon a mistaken finding of fact by the ALJ – i.e., that Dr. Warren "required" plaintiff to ambulate with a cane.  (Doc. 12-2 at 101).  There is no evidence of such a requirement.  As a result, substantial evidence does not support the ALJ's credibility determination against the plaintiff – she cannot be faulted for failing to adhere to her doctor's orders where no such mandate was imposed.  Similarly, the ALJ's finding that the plaintiff's

credibility suffers because she did not "pursue" physical therapy after her second surgery is not based on substantial evidence or, indeed, on any medical evidence of record. The ALJ is not a physician, and he is not empowered to form medical opinions or recommend treatments. See Marbury, 957 F.2d at 840-41 (Johnson, J., concurring) ("An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians[.]"). As with the cane, no physical therapy was prescribed following plaintiff's second surgery; thus, the fact that plaintiff did not have such therapy is not substantial evidence for an adverse credibility determination.

As to the ALJ's finding of a conflict between plaintiff's statements regarding her symptoms and Dr. Crittenden's written evaluation, the ALJ's characterization of Dr. Crittenden's report is inaccurate. Dr. Crittenden's evaluation indicates that plaintiff sits or reclines for much of a day, and it does not provide a basis for a finding of fact that plaintiff can "sweep, cook, and wash dishes" regularly or without limitation simply because those tasks are mentioned. (Doc. 12-9 at 43-44). The ALJ appears to have read the portion of Dr. Crittenden's evaluation regarding sweeping, cooking and washing dishes in isolation from the evaluation as a whole. Dr. Crittenden's evaluation is consistent with the plaintiff's statements, and it is in line with the ALJ's observations of plaintiff at the hearing – i.e., that she changed positions while sitting and she moved about the hearing room. (Doc. 12-2 at 101).

Finally, the ALJ does not explain how plaintiff's ability to laugh undercuts her credibility. (Doc. 12-2 at 101.) It is not obvious why a plaintiff's laughter at a hearing diminishes her credibility regarding her symptoms, and there is no evidence of record to support a finding that plaintiff's account lacks credibility for this reason.

As discussed above,

> "The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." Mims v. Califano, 581 F.2d 1211, 1213 (5th Cir. 1978). "Substantial evidence is more than a scintilla, but less than a preponderance." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing "'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.'" Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983) (quoting Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)). The Eleventh Circuit has gone on to state the following:
>> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's factfinding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.
> Owens v. Heckler, 748 F.2d 1511 (11th Cir. 1984).

King v. Barnhart, 320 F. Supp. 2d 1227, 1232–33 (N.D. Ala. 2004).

This court carefully examined every citation to the record in the ALJ's written opinion, as well as the record as a whole. As noted above, the court does not reweigh the evidence; instead it reviews the record to determine whether each of the ALJ's findings is based on substantial evidence. Having done so, the court concludes that the ALJ's findings regarding the plaintiff's credibility are not reasonable and not based on substantial evidence. See Bloodsworth, 703 F.2d at 1239 (A court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]. Even if [the court] find[s] that the evidence preponderates against the [Commissioner's] decision, [it] must affirm if the decision is supported by substantial evidence."). The ALJ's findings to support his credibility determination with respect to the plaintiff's subjective statements appear to be premised upon an incomplete or incorrect assessment of the evidence. See Hale v. Bowen, 831 F.2d at 1011.

    II.    <u>Treating Physician Opinion Evidence</u>

13

The ALJ also erred regarding his treatment of Dr. Warren's opinion testimony; he did not articulate good cause for failing to give Dr. Warren's opinion evidence the requisite "substantial weight."[5] The Commissioner must specify what weight is given to a treating physician's opinion and any reason for giving it no weight at all. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) and Wiggins v. Schweiker, 679 F.2d 1387, 1389-90 (11th Cir. 1982)). Failure to do so is reversible error. Id. (citations omitted). The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhard, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted). "Good cause" exists when:

- the treating physician's opinion was not bolstered by the evidence,
- the evidence supported a contrary finding; or
- the treating physician's opinion was conclusory or inconsistent with his or her own medical records.

Id. at 1241 (citation omitted).

The ALJ must clearly articulate his or her reasons for disregarding a treating physician's opinion, and the failure to do so is reversible error. Lewis, 125 F.3d at 1440 (citation omitted); see also 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no error. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (*per curiam*).

With respect to Dr. Warren's opinion evidence and testimony, the ALJ indicated that

---

[5] The court does not reach the issue of whether the ALJ properly discounted the opinion evidence provided by Ms. Lynn. (Doc. 10 at 11-13).

14

> Dr. Warren receives little weight for his treating opinion that the claimant is limited to sitting, standing, and walking for three hours per workday. (Exhibit 19F/5). The doctor added that the claimant could lift up to 5 pounds, use her upper extremities only occasionally, and she required a cane. (Exhibit 19F/5-6). The exertional restrictions are undermined by the claimant's stable imaging results and her demonstrated ability to walk without assistive devices. (Exhibit 8F/3). The record does not contain evidence that supports the lifting or other upper extremity restrictions.

(Doc. 12-2 at 101). The ALJ also remarks that he

> evaluated each medical source's relationship to the claimant. Specifically, the factors considered were whether the professional examined the claimant, whether they served as a treating source, their area of specialty if any, the supportability of medical opinions, consistency with the record, and their knowledge of the procedure and the record as a whole.

(Doc. 12-2 at 101).

It is not evident that the ALJ considered Dr. Warren's history of treating the plaintiff for her severe impairments, his area of specialization as a neurosurgeon, or his status as the plaintiff's treating physician. See Wilcox v. Comm'r, Soc. Sec. Admin., 442 F. App'x 438, 440 (11th Cir. 2011)(a treating physician's opinion testimony is entitled to substantial weight unless the ALJ articulates good cause for assigning lesser weight and "the opinions of specialists regarding medical issues related to his area of specialty generally are given more weight than the opinions of non-specialists"); Lewis, supra (the ALJ must articulate adequate reasons for failure to give a treating physician's opinion substantial weight). This is error. The ALJ's conclusory, catch-all statement as to the "factors" he employed is not specific to Dr. Warren, and it does not supply sufficient information for the court to be assured that proper legal standards were applied.

Also, the ALJ's rejection of Dr. Warren's opinions is not based upon substantial evidence. No evidence of record contradicts Dr. Warren's "opinion that [plaintiff] is limited to sitting, standing, and walking for three hours per workday." (Doc. 12-2 at 101). As explained above, the ALJ misstates the record by finding that plaintiff "required a cane," and an ALJ's factual error

15

which imposes a medical restriction where there is none does not serve as an evidentiary basis for discounting a treating physician's opinion. The fact that the plaintiff could walk without a cane – not prescribed by any doctor – does not provide good cause to reject Dr. Warren's opinion testimony in its entirety. Regarding the plaintiff's post-surgery MRIs, the ALJ's reliance on the plaintiff's "stable imaging results" does not supply substantial evidence or good cause to discount Dr. Warren's opinion evidence. "Stable" imaging results do not indicate that a patient is well or functional, and the ALJ impermissibly interpreted raw medical data to reach that conclusion. See Freeman v. Schweiker, 681 F.22 727, 731 (11th Cir. 1982). Finally, the ALJ's statement that the record lacks evidence to support Dr. Warren's lifting and upper extremity restrictions is inaccurate. The ALJ's statement can be read two ways – either the ALJ could have been noting an absence of evidence, which was not the case,[6] or he made factual findings on evidence of record that are not set out in his written decision. Either reading of the ALJ's statement that the evidence does not support Dr. Warren's lifting and upper extremity limitations fails to supply the court with sufficient information to discern whether proper legal standards were applied, or whether the ALJ's decision is based on substantial evidence. This ambiguity alone necessitates remand.

    III.    <u>The ALJ Cannot Act as Judge and Medical Doctor</u>

Plaintiff's argument that the ALJ acted as both judge and medical doctor is supported by the record. Plaintiff is correct that an "ALJ cannot act as both judge and physician." (Doc. 10 at 14 (citing Marbury v. Sullivan, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring) ("An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians[.]"). The plaintiff accuses the ALJ of "succumbing to the temptation to play doctor" by creating his own functional limitations

---

[6] The record contains plaintiff's statements to her physicians, her hearing testimony, medical records, and the evaluations of Dr. Crittendon and Ms. Lynn, all of which could support Dr. Warren's restrictions.

"which he included into his RFC without other medical support thereto." (Doc. 10 at 14-15 (citations, emphasis, and marks omitted)). The court has reviewed the record and, as discussed above, found numerous instances in which the ALJ makes medical evaluations that are either based on a misreading of the medical evidence of record or have no evidentiary support in the record.

An ALJ is tasked with the role of adjudicating and assessing a claimant's RFC. See 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). "Indeed, the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC." Castle v. Colvin, 557 F. App'x 849, 853–54 (11th Cir. 2014) (citing 20 C.F.R. § 404.1546(c)). However, the ALJ cannot substitute his opinion for those of medical sources. The RFC in the instant case is not supported by substantial evidence, it contains limitations and restrictions that lack an evidentiary basis,[7] and it is in conflict with medical records – specifically Dr. Warren's medical opinion. An RFC cannot be based on the ALJ's own medical evaluations; in the instant case, the ALJ's RFC simply does not pass legal muster.

## CONCLUSION

Accordingly, for the reasons discussed, the decision of the Commissioner will be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) by separate judgment so that the Commissioner can conduct additional proceedings consistent with this opinion. The court does not address the issues raised by plaintiff except as expressed in this opinion. The court expects that the Commissioner will consider plaintiff's arguments as to those

---

[7] For example, the court cannot determine the ALJ's evidentiary basis for his conclusions that plaintiff can sit, stand or walk for six hours in an eight-hour workday, and that she requires the ability to alternate between sitting, standing and walking in 30-60 minute intervals while at her workstation. (Doc. 12-2 at 98).

issues on remand, and will develop the record as is necessary in areas not expressly considered in this opinion.  In addition, it is

ORDERED that plaintiff's motion for an award of reasonable attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 241(d), is DENIED without prejudice to plaintiff's right to refile a timely motion, and plaintiff's motion for an extension of time to file an application for attorney's fees under 42 U.S.C. § 406(b) is DENIED.  (Doc. 10 at 15).

DONE, on this the 7th day of December, 2016.

/s/ Susan Russ Walker
Susan Russ Walker
Chief United States Magistrate Judge